UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  09-21472-Civ-COOKE/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff

vs.

LEADER TOBACCO COMPANY, *et al*.,

    Defendants.

_____/

## CONSENT JUDGMENT

THIS MATTER is before me on the parties' Stipulation for Entry of Consent Judgment. (ECF No. 82).  The Parties represent that this Consent Judgment is entered into between Plaintiff, the United States of America, and Defendant, Belcorp of America, Inc. ("Belcorp"), for the purpose of fully resolving all issues raised in this action.  The Parties stipulate as follows:

1. The Fair and Equitable Tobacco Reform Act of 2004 ("FETRA") repealed the tobacco marketing quota and related price support programs authorized by Title III of the Agricultural Adjustment Act of 1938 and the Agricultural Act of 1949, transforming the tobacco production system to a free market system at the end of the 2004 crop year. 7 U.S.C. §§ 518 to 518f.  To ease the transition from the highly regulated market to the free market, FETRA established the Tobacco Transition Payment Program ("TTPP"), and gave the Secretary of Agriculture, acting through the Commodity Credit Corporation ("CCC"), the authority to administer the program from 2005 to 2014.  *Id.*

2. In administering the TTPP program, the Secretary must impose quarterly assessments upon tobacco manufacturers and importers.  The CCC calculates these quarterly

assessments by projecting program costs for a particular program year and allocating those costs among each of six classes of tobacco products. 7 U.S.C. § 518d(c). Within each product class, the CCC further allocates program costs based on the market share of each manufacturer or importer. *Id.* § 518d(e). Tobacco manufacturers and importers subject to FETRA must submit to the CCC the information necessary for the CCC to calculate their respective market shares. *Id.* § 518d(h).

3. At least thirty days prior to the end of each calendar year quarter, the CCC provides each manufacturer or importer subject to an assessment with written notice setting forth the amount of the assessment. *Id.* § 518d(d)(1). Assessment payments are due from manufacturers and importers at the end of each calendar year quarter. *Id.* § 518d(d)(3)(A). The CCC immediately assesses interest on any amounts unpaid by the end of each calendar year quarter.

4. On June 2, 2009, the United States filed a complaint alleging that Belcorp, as an importer and a manufacturer of tobacco products subject to FETRA, (1) failed to submit information required under the law*, id.* § 518d(h)(2)(B); and (2) failed to pay its assessments owed under FETRA. 7 U.S.C. § 518d(b). Belcorp did not answer the complaint or otherwise respond in a timely manner.

5. It is the mutual desire of the United States and Belcorp to resolve all matters between them related to, or in any way arising out of, the facts alleged in the complaint herein, without the need for further litigation.

Based on the agreement of the parties, it is **ORDERED and ADJUDGED**, as follows:

6. Belcorp shall pay the United States its total outstanding debt, which shall consist of Belcorp's balance as of April 30, 2011, of $3,448,999.60, plus any interest (at a rate of

2.625 percent per year) that accrues between May 1, 2011, and the date on which the Court enters this Consent Judgment (the "Entry Date").

7. Within five (5) calendar days of the Entry Date, Belcorp will pay CCC $280,000.00.

8. Belcorp will pay its total outstanding debt, plus 2.625 percent interest a year, by August 1, 2014 in the form of monthly payments, as further described below.

9. Within ten (10) days of the $280,000.00 payment referred to in paragraph 7, the CCC shall provide Belcorp with an amortization schedule reflecting the amount and due date of each monthly payment.

10. Belcorp will pay the remainder of its outstanding debt in monthly installments, due on or before the 1st day of each month, beginning with the first full month after the Entry Date. Belcorp shall make monthly payments of no less than $40,000.00 per month unless the total outstanding balance falls below that amount, at which time the remaining balance will be paid. In addition, Belcorp shall make a balloon payment of at least $600,000.00 towards the outstanding balance of the loan in each of the calendar years of 2012, 2013, and 2014 between January 1 and March 31.

11. All payments must be made via Pay.gov. All payments will be applied first to the interest due, with the remaining amount applied to the principal.

12. If any payment required under Paragraphs 7 and 10 is not submitted within 10 days of the due date, then Belcorp's entire outstanding debt will become instantly due and payable. The United States may, without notice, collect the outstanding debt using any method, including but not limited to, administrative offset from payments due Belcorp from any federal agency.

13. Belcorp shall also timely pay all assessments the CCC imposes upon Belcorp beginning

3

June 30, 2011, through the termination of the FETRA assessment program in 2014. If any such payment required under FETRA is not submitted within 30 days of the due date, then Belcorp's entire outstanding debt will become instantly due and payable. The United States may, without notice, collect the outstanding debt using any method, including but not limited to, administrative offset from payments due Belcorp from any federal agency.

14. Within ninety (90) days of the Entry Date, Belcorp shall provide the CCC with true and accurate copies of: (1) TTB Form 5000.24 – Excise Tax Return for May 2005 to December 2007; (2) TTB Form 5210.50 – Report, Manufacturer of Tobacco Products or Cigarette Papers and Tubes for May 2005 to December 2007; (3) CBP Form 7501 Importer Entry Summary for October 2005 to January 2007 and March 2007 to April 2008; and (3) TTB Form 5220.6 – Monthly Report – Tobacco Product Importer for October 2004 to December 2004 and April 2005 to April 2008. However, Belcorp is not required to recreate or bring into existence documents that were never created or otherwise do not exist.

15. Belcorp shall thereafter timely provide all information required to be submitted under 7 U.S.C. § 518d, until the termination of the assessment program in 2014.

16. Upon receipt of the final payments set forth in Paragraphs 7 and 10 and all information required to be submitted under Paragraphs 14 and 15 of this Consent Judgment, but in any event not later than ten (10) days thereafter, the United States, by its counsel, shall execute and file with the Court a notice indicating that the agreed payments have been made and satisfied, and this case shall be dismissed.

17. With regard to assessments issued before the Entry Date, Belcorp is permitted to submit revised removal reports to CCC. If CCC determines that a recalculation is appropriate, then any resulting credits will be reflected in the next revision. The recalculation will not affect the total outstanding debt.

18. Each of the Parties to this Consent Judgment shall bear its own attorney's fees and costs, including the preparation and performance of this Consent Judgment.

19. This Consent Judgment represents the entire understanding and agreement of the Parties. There are no oral or other understandings between the parties with respect to any matter or claim that is the subject of this lawsuit or of this Consent Judgment.

20. The Parties enter into this Consent Judgment freely and voluntarily, and Belcorp hereby agrees and promises that it shall not seek to rescind this Consent Judgment on the grounds of coercion, duress, mistake, or any other basis after execution of this Consent Judgment.

21. The Parties to this action have the legal authority to enter into this Consent Judgment, and each party has authorized its undersigned representative to execute this Consent Judgment on its behalf.

**DONE and ORDERED** in chambers, at Miami, Florida, this 29TH day of June 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of record*